IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS NAVARROLI,<br>on behalf of plaintiff and the<br>class members described below,<br>and PEOPLE OF THE STATE OF<br>ILLINOIS ex rel. NICHOLAS<br>NAVARROLI,<br><br>                Plaintiffs,<br><br>    vs.<br><br>PREMIUM ASSET SERVICES LLC,<br>and SCOTT CASS,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 17-cv-5483<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT – CLASS ACTION

1. Plaintiff Nicholas Navarroli ("plaintiff" or "Navarroli") brings this action to secure redress for improper debt collection practices by defendants. Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"). In addition, plaintiff People of the State of Illinois ex rel. Nicholas Navarroli brings suit to enjoin violation of the Illinois Collection Agency Act, 225 ILCS 425/1 et seq.

2. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

3. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

4. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt

collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

5. The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

6. Plaintiff Nicholas Navarroli seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq*.

7. The Illinois Collection Agency Act reflects a determination that "The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes. . . . It is further declared to be the public policy of this State to protect consumers against debt collection abuse." 225 ILCS 425/1a.

## JURISDICTION AND VENUE

8. The Court has jurisdiction under 15 U.S.C. §1692k, 28 U.S.C. §1331, 28 U.S.C. §1337, and 28 U.S.C. §1367.

9. Venue and personal jurisdiction in this District is proper because defendants' collection communications were received by plaintiff Nicholas Navarroli in this District.

## PARTIES

10. Plaintiff is a resident of the Northern District of Illinois.

11. Defendant Premium Asset Services, LLC, ( "Premium") is a limited liability company chartered under Nevada law. Its manager and registered agent is Scott D. Cass, 2414 S. Fairview St., Suite 210, Santa Ana, CA 92704.

12. The sole business of Defendant Premium, is the acquisition and collection of consumer debts.

13. Defendant Premium:

    a. Is not licensed as a collection agency in Illinois, California (which does not license collection agencies), or Nevada;

    b. Uses the mails and telephone system in connection with collecting consumer debts for others;

    c. Is a debt collector as defined in the FDCPA; and

    d. Is a collection agency as defined in the ICAA.

14. Defendant Scott Cass ("Cass") directs the operations of defendant Premium Asset Services, LLC, as its manager.

15. Cass is well aware of the fact that a collection agency license is necessary to collect debts from Illinois residents. He signed a settlement agreement in a prior case involving such a claim, *People ex rel. Leeb v. Premium Asset Services, LLC,* 14 CH 123 (Cook Co. Cir. Ct.). Knowing of the licensing requirement, he allowed Premium Asset Services, LLC to continue collecting debts from Illinois residents without a license.

## FACTS

15. Defendants have been attempting to collect from plaintiff a debt consisting of a First Savings Credit Card obtained and used for personal, family or household purposes and not for business purposes.

16. The debt went into default in late 2008. (Exhibits A-B)

17. The applicable Illinois statute of limitations is five years, so that the debt was time-barred by 2014.

18. In June-July 2017, representatives of defendant Premium called plaintiff in Chicago, Illinois, on multiple occasions, stated that they were collecting the First Savings Credit

Card debt, and that if plaintiff did not pay they would garnish his wages. They also threatened to contact plaintiff's mother.

19. Defendant Premium did not send a "notice of debt" as required by 15 U.S.C. §1692g to plaintiff prior to or within 5 days after these communications.

20. Defendant Premium did not disclose that the debt was time-barred.

21. Defendant Premium threatened to sue on a time-barred debt.

22. Defendant Premium threatened to sue even though it was not licensed to collect from Illinois residents.

23. It is the policy and practice of Defendant Premium to:

    a. Collect debts from residents of Illinois although not licensed to do so;

    b. Acquire old debts, beyond the statute of limitations;

    c. Collect time-barred debts without disclosing that they are time-barred;

    d. Threaten to sue on time-barred debts;

    e. Not provide a "notice of debt" as required by 15 U.S.C. §1692g.

24. Cass is personally aware that Defendant Premium is collecting debts from Illinois residents without a required license. On information and belief, he is also personally aware of the other practices set forth above.

25. As manager of Premium, defendant Scott Cass has the authority to prevent the practices set forth above, and chose to not do so.

## COUNT I – FDCPA – CLASS CLAIM

26. Plaintiff Nicholas Navarroli incorporates paragraphs 1-26.

27. This claim is against both defendants.

28. Defendants violated 15 U.S.C. §§1692e, 1692e(2) and 1692e(10) by engaging in the conduct complained of.

29. Defendants also violated 15 U.S.C. §1692g.

30. Section 1692e provides:

    **§ 1692e.    False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

    **(2)    The false representation of--**

        **(A)    the character, amount, or legal status of any debt; . . .**

    **(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

31.    Section 1692g provides:

**§ 1692g. Validation of debts**

**(a) Notice of debt; contents.** Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

    (1) the amount of the debt;

    (2) the name of the creditor to whom the debt is owed;

    (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

    (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

    (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b) Disputed debts.** If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name

**and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

**(c) Admission of liability. The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.**

**(d) Legal pleadings. A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).**

**(e) Notice provisions. The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986 [*26 USCS §§ 1* et seq.], title V of Gramm-Leach-Bliley Act [*15 USCS §§ 6801* et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.**

## CLASS ALLEGATIONS

32. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3)

33. The class consists of (a) all individuals with Illinois addresses, (b) from whom Premium Asset Services, LLC, attempted to collect a debt, (c) on or after a date one year prior to the filing of this action and on or before a date 21 days after the filing of this action.

34. Each such person was subjected to one or more of the violations complained of.

35. On information and belief, the class is so numerous that joinder of all members is not practicable.

36. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are (a) whether defendants engage in the practices complained

of, (b) whether such practices violate the FDCPA, and (c) the involvement and responsibility of Cass.

37. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

38. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

39. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible;

    b. Members of the class are likely to be unaware of their rights;

    c. Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class members and against defendants for:

    i. Statutory damages;

    ii. Any actual damages incurred by class members, including all amounts paid on time-barred debts;

    iii. Attorney's fees, litigation expenses and costs of suit;

    iv. Such other and further relief as the Court deems proper.

## COUNT II – ICAA INJUNCTION

40. Plaintiff People of the State of Illinois ex rel. Nicholas Navarroli incorporates paragraphs 1-40.

41. This claim is against Premium Asset Services LLC.

42. Defendant violated 225 ILCS 425/4 by collecting without a license.

43. Section 425/4 provides:

> **Sec. 4. No collection agency shall operate in this State, directly or indirectly engage in the business of collecting, solicit claims for others, have a sales office, a client, or solicit a client in this State, exercise the right to collect, or receive payment for another of any account, bill or other indebtedness, without registering under this Act except that no collection agency shall be required to be licensed or maintain an established business address in this State if the agency's activities in this State are limited to collecting debts from debtors located in this State by means of interstate communication, including telephone, mail, or facsimile transmission from the agency's location in another state provided they are licensed in that state and these same privileges are permitted in that licensed state to agencies licensed in Illinois.**

44. Defendant Premium Asset Services LLC does not qualify for the exemption because it does not have a collection agency license from California or Nevada.

45. Section 14a of the ICAA, 225 ILCS 425/14a, provides:

> **Sec. 14a. The practice as a collection agency by any entity not holding a valid and current license under this Act is declared to be inimical to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare. The Director, the Attorney General, the State's Attorney of any county in the State, or any person may maintain an action in the name of the People of the State of Illinois, and may apply for injunctive relief in any circuit court to enjoin such entity from engaging in such practice. Upon the filing of a verified petition in such court, the court, if satisfied by affidavit or otherwise that such entity has been engaged in such practice without a valid and current license, may enter a temporary restraining order without notice or bond, enjoining the defendant from such further practice. Only the showing of nonlicensure, by affidavit or otherwise, is necessary in order for a temporary injunction to issue. A copy of the verified complaint shall be served upon the defendant and the proceedings shall thereafter be conducted as in other civil cases except as modified by this Section. If it is established that the defendant has been or is engaged in such unlawful practice, the court may enter an order or judgment perpetually enjoining the defendant from further practice. In all proceedings hereunder, the court, in its discretion, may apportion the costs among the parties interested in the action, including cost of filing the complaint, service of process, witness fees and expenses, court reporter charges and reasonable attorneys' fees. In case of violation of any injunctive order entered under the provisions of this Section, the court may summarily try and punish the offender for contempt of court. Such injunction proceedings shall be in addition to, and not in lieu of, all penalties and other remedies provided in this Act.**

WHEREFORE, plaintiff requests that the Court grant the following relief against defendant:

    i.    An injunction against further collection activities directed at persons in the State of Illinois;

    ii.    Attorney's fees, litigation expenses and costs;

    iii.    Such other and further relief as is appropriate.

                                                              s/ Daniel A Edelman
                                                              Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
Patricia N. Jjemba
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

T:\34228\Pleading\Complaint_Pleading.WPD

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                              s/ Daniel A. Edelman
                                              Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
 & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

                                               s/ Daniel A. Edelman
                                               Daniel A. Edelman